Houston Frank Ford Jr., the appellant, was convicted for possession of a controlled substance, cocaine, in violation of13A-12-212, Ala. Code 1975, and for resisting arrest, in violation of 13A-10-41, Ala. Code 1975. These convictions must be reversed.
The appellant filed a motion to suppress certain evidence. A hearing was held on the motion to suppress. Police Officer Jerry Glenn Whetstone of the Alexander City Police Department's narcotics division was the only witness to testify at the hearing. At the conclusion of the hearing, the trial court denied the motion, and the appellant waived a jury trial and was convicted upon the evidence that was the subject of the hearing. He reserved the right to appeal the ruling on the motion to suppress.
The appellant contends that the "tip" received from a "confidential informant" was not proven to be reliable or sufficient to establish reasonable suspicion to stop the appellant's automobile and, therefore, that the subsequent "pat-down" search of his person for a weapon was illegal. The "pat-down" search of the appellant's person resulted in a scuffle with the arresting police officer, during which the appellant deliberately threw what was subsequently determined to be 26.62 grams of crack cocaine to the ground. Ultimately the trial judge overruled the motion to suppress, finding that, based on "the totality of the circumstances," the pat-down was legal. R. 56.
The trial court heard the following testimony at the hearing on the motion to suppress. The incident occurred on December 29, 1994. Whetstone testified that he had known the appellant for over 10 years and that he had arrested him on prior occasions on narcotics offenses. R. 4. He stated that the police file maintained on the appellant reflected that in May 1993 an unknown black male caller informed the police department that the appellant was selling crack cocaine at the "washer and trailer" in Alexander City. R. 8. In November 1993 the chief of police received a letter from an anonymous source stating that the appellant was selling crack everyday at "Houston's Washer on Jefferson Street," every weekend at "the bar at Ford's Club on North Central Avenue," and also at "the store on Jefferson street," and "the house at 915 Jefferson Street." R. 9. On December 28, 1994, Whetstone received information from a known confidential informant that the appellant was going to Wetumpka on December 29 when he could find a driver to pick up some crack cocaine. R. 9-10. Whetstone testified that the informant had been reliable on four or five previous occasions. R. 10-11, 31, 37. According to Whetstone, the informant's reliability had been proven by his having supplied information to the police and worked with the police to verify this information by participating in monitored and recorded undercover conversations with drug dealers. Arrests were not made at the time these conversations occurred in order to protect the identity of the informant. R. 37-8.
At 8:15 a.m. on December 29 the informant called Whetstone and told him that the appellant *Page 950 
had found a driver, a black male, and had left for Wetumpka at 8:00 a.m. in the appellant's grey Ford Crown Victoria automobile, tag number 62ASM21, and that he was going to pick up some cocaine. R. 13. Whetstone went to the intersection of highways 259 and 22, which is "one of the common routes used between Alexander City and Wetumpka. R. 13. A second police unit went to another road between Alexander City and Wetumpka to see if the appellant passed. Approximately one and one-half hours after police received the "tip", (at 9:45 a.m.), the appellant, as described by the informant, drove past Whetstone, returning to Alexander City from the direction of Wetumpka. R. 14. Whetstone caught up with the appellant's vehicle as it pulled into the appellant's yard. R. 15. Whetstone testified that because the appellant was carrying a gun the last time Whetstone arrested him, Whetstone informed the appellant that he was going to "pat him down." Whetstone noticed a large "bulge" in the appellant's right front shirt pocket and recognized part of the contents as money and a paper towel. Whetstone ordered the appellant to empty this pocket. The appellant removed some money from this pocket but he pushed the other contents deeper into the pocket. Whetstone instructed the appellant to empty the pocket, but the appellant refused. When Whetstone reached toward the pocket, the appellant began a "scuffle" with the officer during which the appellant removed what was subsequently determined to be cocaine from the pocket, and threw "it across the yard." R. 18. The appellant was arrested for possession of cocaine and for resisting arrest.
The appellant raised the following two issues on appeal: 1) Whether a confidential informant's "tip" provided the reasonable suspicion that the appellant was engaged in criminal activity to justify an investigatory stop of the appellant's vehicle pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968) and, 2) Whether the "pat-down" search of the appellant's person for weapons was a pretext for an illegal search without a warrant? Because we must reverse the trial court's judgment based on the second issue, discussion of the first issue is unnecessary. However, after reviewing the record, we have determined that in this case, the tip was reliable and corroboration of the tip was minimally sufficient. Under the facts presented in this case, the reliability of the information provided by the informant was sufficient to justify the suspicion that the appellant was engaged in criminal activity and therefore to permit a valid stop and frisk as permitted by Terry.
The appellant contends that Whetstone's search of his person was illegal. The facts show that Whetstone exceeded the scope of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968), which allows for a search "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, 392 U.S. at 29,88 S.Ct. at 1884.
Whetstone testified that after he stopped the appellant, the following occurred:
"Q: What did you tell him?
 "A: I told him that I had gotten a complaint that he was going to Wetumpka this morning to pick up some crack cocaine.
"Q: What if anything did he say?
 "A: And he indicated, no. And, because of my past knowledge of Mr. Ford, I advised him: 'Have you got a gun today, Houston? I'm going to pat you down. The last time I arrested you, you had one.' So, I proceeded to pat him down. I patted down his back pockets first, his front pockets, and this pocket. In this pocket —
"Q: You're indicating, this pocket; what is that?
 "A: His left front shirt pocket. In his right front pocket there was a large bulge. And, because of having to reach across, in front of Mr. Ford, I asked him: 'What do you have in your other pocket? Do you have a gun there?' And he said, 'No.' But I could see a large bulge. I said: 'Well, what do you have in your pocket?' And, I could see a paper towel sticking up, and a corner of some green U.S. currency. At which time he looked down and said: 'It's money.' I said: 'You don't have anything else in there but money?' He reached in and pulled the money out and laid it — and *Page 951 
handed it to me. I took it and laid it on the trunk of his car. Then I asked him: 'What else do you have in your pocket?' And, he just looked down at it, and as he proceeded to push down the object into his pocket, he said: 'Nothing.' I said: 'Houston, I see you have something in your pocket, what is it?' And, he again said: 'Nothing.' And, I said: 'Mr. Ford, take it out of your pocket and lay it on the trunk.' He just kind of looked at me. And I said: 'Mr. Ford, I have a good idea of what you have in your pocket, take it out and lay it on the trunk.' And so, he never did. So, I reached for it, to get it out of his pocket, he grabbed my hand and pushed it away. Then turned his back toward me. We did that about twice. Then I reached around Houston to, you know, secure him, and try to get the object out of his pocket. During the scuffle he reached in his pocket and grabbed the paper towel and threw it across the yard. And, at that time, I knew it was crack cocaine.
"Q: Then what did you do?
 "A: I proceeded to try to place Mr. Houston under arrest."
R. 16-18.
It appears from the testimony and from Whetstone's actions that Whetstone was looking for narcotics in the appellant's shirt pocket — and not a weapon. We cannot believe that the officer thought that a weapon was concealed in the appellant's shirt pocket and then casually instructed him to remove it, knowing that once it was in the appellant's hand it could be used against the officer. As was the case in Sibron v. NewYork, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917
(1968), where "[The Officer] was looking for narcotics and he found them," here, "[t]he search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception — the protection of the officer by disarming a potentially dangerous man." Whetstone did not pat-down the outer portion of the appellant's right shirt pocket to determine if a weapon was present and he did not inadvertently discover the narcotics in the pocket as a result of the "plain feel" doctrine. See Minnesota v.Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334
(1993). When Whetstone told the appellant to "take it out," referring to the contents of his shirt pocket, he went beyond a general protective exploratory search allowed by Terry and was blatantly conducting an illegal warrantless search. "AlthoughTerry permits a warrantless search based on less than probable cause, the extent of the search must be carefully circumscribed. Because the purpose of such a search is to enable the officer to take steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him, . . . the officer may only pat down the suspect's outer clothing in an effort to discover weapons." United States v. Maestas,941 F.2d 273, 276 (5th Cir. 1991), cert. denied, 502 U.S. 1046,112 S.Ct. 909, 116 L.Ed.2d 809 (1992).
The trial court erred in denying of the appellant's motion to suppress the unlawfully seized cocaine. Therefore, the appellant's conviction for possession of cocaine and resisting arrest are reversed.[1] The appellant's conviction for resisting arrest is due to be reversed because his arrest for possession of cocaine was unlawful. "The law in Alabama is clear that, to a limited degree, a party is justified in attempting to resist an unlawful arrest. A party may use reasonable force to extricate himself from an unlawful arrest." Ex parte Wallace,497 So.2d 96, 97 (Ala. 1986),
REVERSED AND REMANDED.
All the Judges concur.
[1] Although the issue was not raised on appeal, we note that the abandonment of the narcotics by the appellant was the result of police misconduct. "To fall outside of fourth amendment protection, a defendant's abandonment of evidence cannot be the product of unlawful police conduct." Carlisle v. Alabama,533 So.2d 645 (Ala.Cr.App. 1987). *Page 952