After her motion to suppress certain evidence was denied, the appellant, Shelia Kaye Martin, entered a plea of guilty to possession of cocaine and was sentenced to three years in the penitentiary. She reserved the right to appeal the trial court's denial of the motion to suppress evidence of the cocaine pipe and the cocaine residue found on that pipe, which served as the basis for the conviction. *Page 142 
At the suppression hearing, Officer Butch Jones, a narcotics investigator in the Dale County Sheriff's office, testified to the following facts: Around midday on February 7, 1995, he assisted the Ozark Police Department investigate a homicide that had occurred on February 4, 1995. He accompanied Ozark homicide officers to the residence of Larry and "Bay-Bay" March. Ozark police officers had received information that the murder weapon, a pistol, would be at this residence. At some point the Marches signed a consent form allowing the officers to search their house for the pistol. It is undisputed that the warrantless search of the house was legal. The Marches, the appellant, and another male and female were inside the house when the officers arrived. Apparently an inconsequential discussion occurred after the officers arrived. Jones testified as follows concerning what occurred then:
 "Q. So, what procedure was followed to search the house?
 "A. As I went to the front door, I told [the appellant] and the other female and the other subject sitting in the living room to come on out of the house. As they were coming out of the house I told them I was going to pat them down to make sure they didn't have a weapon on them.
"Q. Did you do that with the [appellant]?
"A. I asked [the appellant] to empty her pockets.
 "Q. With the idea that you were going to get everybody out of the house and check everybody for weapons?
"A. Right.
 "Q. What did she do when you requested she empty her pockets?
 "A. [The appellant] had something in her hand that looked like white Kleenex or something and I asked [the appellant] to open her hand. When she did, she had a crack pipe and I got it and I told her, 'You know what this means?' and she kind of shook her head and started to the door and then she bolted and ran out the door.
 "Q. Where did she get the item that was in her hand?
"A. Out of her coat pocket.
"Q. And that was at your request?
"A. Yes.
"Q. Did you ask her to do that?
"A. I asked her to empty her pockets, yes, I did.
 "Q. Was that done with everybody in the house? "A. Yes, sir.
"Q. And that was to see if any of them were armed?
 "A. To make sure they weren't armed and to make sure that the homicide weapon we were looking for wasn't coming out of the house.
 "Q. To make sure somebody wasn't sneaking this gun out?
"A. Correct.
"Q. And for security reasons?
"A. Correct.
"Q. She pulled this out of her pocket?
"A. She did.
"Q. And then you took it out of her hand?
"A. I did.
 "Q. Did you have to use force to take it out of her hand?
"A. No.
"Q. Did she open her hand and show it to you?
"A. Yes."
R. 5-7.
Jones testified that the appellant did not live at the house, that she was not a suspect in the murder case, and she was not under investigation for anything — she just happened to be at the residence at the time of the search. R. 4. He testified that he did not believe that the appellant had a weapon in her hand when he saw the Kleenex, but that he was familiar with the appellant and "figured she either had some crack or a crack pipe" in her hand. R. 9-10.
Because the appellant was in no way connected to the objective of the search of the residence, Jones was justified in conducting only an outer clothing frisk or "pat-down" search of the appellant to ensure his safety and to ensure that she was not removing the murder weapon, which in this case Jones *Page 143 
testified was a "regular size pistol," from the house. R. 8. Alabama courts have stated:
 " 'It is not constitutionally permissible "to search a person, not connected in any way with the place being searched, who merely happens to be upon the premises and who is not mentioned or described in the affidavit of probable cause upon which the warrant was issued." . . . "[T]he law requires that there be probable cause to believe that such persons are themselves participating in criminal activity" [Smith v. State, 292 Ala. 120, 121, 289 So.2d 816, 817 (1974),] or, somewhat more precisely, that there be probable cause that evidence which might be concealed or destroyed is to be found upon the person searched."
State v. Mathews, 597 So.2d 235, 237 (Ala.Cr.App. 1992) (footnotes omitted in Mathews; emphasis added). The facts contained in the record do not support the conclusion that Jones had probable cause to believe that the appellant was participating in criminal activity, nor does the record support a finding that he had probable cause to believe that she was concealing on her person evidence that might be destroyed. The record is devoid of information concerning the search of the appellant except that she was present when the residence was searched and that Jones knew that she had a reputation for using cocaine. Neither fact establishes probable cause to search the appellant.
Travis v. State, 381 So.2d 97, (Ala.Cr.App. 1979), cert. denied, 381 So.2d 102 (Ala. 1980), is an example of the facts that will support probable cause to search a visitor who is present in a residence when a search warrant is executed. Officers in Travis had a warrant to search the home of Suzette Allen. They knew that she had been dealing in drugs. They also knew that the defendant was a frequent visitor to her residence, although they did not expect the defendant to be present when they executed the search warrant. Officers also knew the appellant's reputation for drug association. "Although guilty by mere association is not part of our jurisprudence, reputation, when combined with other factors, may help to support a finding of probable cause." Travis, supra. The defendant in Travis also ran out the back door of the residence when the officers attempted to enter the residence. The items sought in the search warrant were small vials that could easily be concealed on the person. The defendant had an opportunity to conceal these items on his person. Under these circumstances, the police had probable cause to search the defendant. TheTravis court stated:
 "It is a settled principle that a warrant to search designated premises will not authorize the search of every individual who happens to be on the premises. Smith v. State, 292 Ala. 120, 289 So.2d 816 (1974). Here the officers had probable cause to believe that evidence which might be concealed or destroyed was to be found upon the defendant. They acted within the lawful limits of their authority in searching his person."
381 So.2d at 101.
The Travis court stated that the officers had a right to conduct a protective pat-down of the defendant regardless of the facts giving rise to probable cause to search him. The court stated:
 "The police also had a right to 'frisk' the defendant for weapons in order to protect themselves. However, such a search 'is limited in scope to a "pat-down" of the suspects' outer clothing and to seizure of hard objects whose size and shape give the officer probable cause to believe they are weapons'. Smith, 292 Ala. at 122, 289 So.2d at 818; Thomas v. State, 353 So.2d 54, 57
(Ala.Cr.App.), cert. denied, 353 So.2d 59
(Ala. 1977). The largest 'vial' or 'tube' found in the defendant's pocket was 'Tum-size.' Because the officer frisking the defendant for weapons specifically stated that he 'didn't conceivably think they were any type of weapons in particular,' we do not base our finding of the lawfulness of the search of the defendant upon the theory that it was justified as a search for weapons. Under our present decision such a finding is unnecessary to the merits of the issue."
381 So.2d at 101. The search in Travis was based on the fact that there was probable cause for the officers to believe that evidence that might be concealed or destroyed was to *Page 144 
be found upon the defendant's person. That is not the case here. Jones stated that he did not suspect the appellant of criminal activity connected with the residence search, yet he ordered her to empty her pockets. This constituted a search and was not a safety pat-down.
In Thomas v. State, 353 So.2d 54, 57 (Ala.Cr.App.), cert. denied, 353 So.2d 59 (Ala. 1977), "the appellant was a complete stranger to the officers at the time, was not a suspect involved in the commission of any offense, was not named in the search warrant, and did nothing to indicate by his conduct or appearance that he possessed any weapon. For aught that appears, the appellant was a mere visitor to the apartment." This court stated that "the fact that one associates with narcotics dealers in no way calls for an inference that such person is engaged in the criminal traffic of narcotics" and ruled that "[o]nce the officer is safe (i.e., the frisk fails to reveal any weapon), no further rummaging is warranted."
Here, Jones's order to the appellant to empty her pocket amounted to a search that was far too intrusive to be called a stop and frisk. This court recently addressed the propriety of an officer's command to a suspect to empty his pocket. It stated:
 "As in Sibron v. New York, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968) where '[The Officer] was looking for narcotics and he found them,' here as there, '[t]he search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception — the protection of the officer by disarming a potentially dangerous man.' [The officer] did not 'pat down' the outer portion of the appellant's right shirt pocket to determine if a weapon was present or inadvertently discover the narcotics in the pocket as a result of the 'plain feel' doctrine. See Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334
(1993). When [the officer] told the appellant to 'take it out,' referring to the contents of his shirt pocket, he went beyond a general protective exploratory search approved by Terry and was blatantly conducting a illegal warrantless search."
Ford v. State, 680 So.2d 948 (Ala.Cr.App. 1995).
We reluctantly hold that the officer's conduct in this case amounted to a search of the appellant, which was not justified pursuant to any of the exceptions to the warrant requirement. Accordingly, evidence of the cocaine taken from her was due to be suppressed.
The conviction is reversed and the cause is remanded to the circuit court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.