The appellant, Bruce Wykine Adams, was convicted of second-degree possession of marijuana, a violation of § 13A-12-214, Ala. Code 1975. He was sentenced to one year's imprisonment.
 I.
Adams contends that the trial court erred in denying his motion to exclude marijuana seized during a search of his person. Specifically, he argues that the police conducted an illegal patdown, thereby violating his Fourth Amendment rights, see Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
The state's evidence established the following. Bay Minette police officer James Eissler testified that around midnight on April 27, 1998, he stopped a car for speeding. Eissler stated that Jerome Williams was the driver and that Adams was sitting in the front passenger's seat. Eissler further stated that he stood next to the driver's window and asked Williams and Adams for identification. According to *Page 575 
Eissler, he had a cold and did not smell the odor of marijuana in the car. Eissler testified that he walked to his car and began to write a traffic citation and that, as he was writing the citation, Bay Minette police officer Kerry Mitchum arrived in his patrol car. Mitchum testified that he walked up to the driver's side of Williams's car and during his conversation with Williams he smelled the odor of marijuana. Mitchum further stated that he walked over to Eissler and told him that he believed there was marijuana in the car. According to Mitchum, he returned to Williams's car and, when he questioned Williams concerning the odor, Williams stated that he had been smoking marijuana.[1]
Mitchum testified that Williams consented to a search of his car. Mitchum stated that, although he told Williams to step out of the car and told Adams to remain in the car, Adams stepped out of the car when Williams stepped out of the car. Eissler, who had approached the vehicle on the passenger's side, indicated that he believed there was a possibility that Adams was armed when he got out of the vehicle. (R. 17.) Thus, he told Adams to put his hands on top of the car, and he patted him down to search for weapons and contraband. Eissler further stated that he found a substance that appeared to be marijuana in the front pocket of Adams's pants. Mitchum testified that Adams and Williams were not under arrest before the search, and that the search was conducted for safety purposes. During the State's examination of Eissler and after the State rested, defense counsel moved to exclude any evidence obtained as the result of the search of the car and the search of Adams.[2] The trial court denied the motion.
First, we note that the initial stop of the vehicle was legal. The commission of a traffic violation justifies a Terry stop of a vehicle by a police officer. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968); Gilbert v. State, 686 So.2d 266, 267 (Ala.Civ.App.), cert. denied, 686 So.2d 267 (Ala. 1996); Martinez v. State, 624 So.2d 711, 714
(Ala.Cr.App. 1993). Because Officer Eissler testified that he stopped the car for speeding, sufficient probable cause was established to justify the Terry stop of the car. Moreover, we note that Mitchum could have ordered — although he testified that he did not — Adams to get out of the vehicle. Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882,137 L.Ed.2d 41 (1997). Furthermore, once Adams got out of the vehicle, it was permissible for Eissler to conduct a patdown for weapons. See Terry, supra.
Adams, however, argues that Eissler's search of his person was illegal. Specifically, he maintains that Eissler exceeded the scope ofTerry, which allows for a search "reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, 392 U.S. at 29, 88 S.Ct. at 1884.
Eissler testified that the following occurred with regard to his search of Adams:
 "[Eissler]: As I approached the front passenger door the door came open and *Page 576 
[Adams] started stepping out of the vehicle.
"[Prosecutor]: Then what did you do next?
 "[Eissler]: I automatically told Mr. Adams to turn and put his hand on top of the car.
"[Prosecutor]: Then what happened?
 "[Eissler]: We patted him down and I found a large amount of marijuana in his right front pocket.
". . . .
 "[Prosecutor]: Are you familiar with the identification of marijuana?
"[Eissler]: Yes, sir."
(R. 8-9.) The following testimony was elicited by defense counsel during his cross-examination of Eissler:
 "[Defense counsel]: Okay. During your patdown of [Adams], what were you looking for?
 "[Eissler]: Pretty much anything, sir; weapons, drugs, contraband. . . of any kind.
 "[Defense counsel]: In point of fact, the purpose of the patdown was really to look for contraband or drugs, wasn't it?
"[Eissler]: Or weapons.
 "[Defense counsel]: Can you tell from touching somebody's pocket the difference between a weapon and a bag of green leafy material?
"[Eissler]: Pretty much, yes, sir.
 "[Defense counsel]: You determined from this touching of the outer pocket that there was not a weapon there; did you not?
 "[Eissler]: Um — on the feel of the outside that didn't feel like a weapon, yes, sir."
(R. 26.)
We addressed a similar issue in Ford v. State, 680 So.2d 948
(Ala.Cr.App. 1995), in that case this Court stated:
 "[The officer] did not pat-down the outer portion of the appellant's right shirt pocket to determine if a weapon was present and did not inadvertently discover the narcotics in the pocket as a result of the `plain feel' doctrine. See Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). When [the officer] told the appellant to `take it out,' referring to the contents of his shirt pocket, he went beyond a general protective exploratory search allowed by Terry and was blatantly conducting an illegal warrantless search. `Although Terry permits a warrantless search based on less than probable cause, the extent of the search must be carefully circumscribed. Because the purpose of such a search is to enable the officer to take steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him, . . . the officer may only pat down the suspect's outer clothing in an effort to discover weapons.' United States v. Maestas, 941 F.2d 273, 276
(5th Cir. 1991), cert. denied, 502 U.S. 1046, 112 S.Ct. 909, 116 L.Ed.2d 809 (1992)."
680 So.2d at 951.(Emphasis added.)
Additionally, in Allen v. State, 689 So.2d 212 (Ala.Cr.App. 1995), this Court stated:
 "Generally, a Terry patdown must be strictly `limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.' Terry, 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908. In Minnesota v. Dickerson [, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993),] the United States Supreme Court recognized a `plain feel' exception to the Fourth Amendment protection analogous to the `plain view' exception. The court stated: *Page 577 
 "`If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.'
"508 U.S. at 375-76, 113 S.Ct. at 2137, 124 L.Ed.2d at 346." 689 So.2d at 213-14. (Emphasis added in Allen.)
In this case, Eissler testified that he knew that Adams did not have a weapon in the front pocket of his pants, and that he reached into Adams's pocket and found marijuana. Eissler did not testify that when he was patting down the outside of Adams's pocket the object in the pocket felt like contraband. Nothing in the record indicates that during the limited scope of the Terry search that Eissler patted down the outside of Adams's pocket before sticking his hand inside Adams's pocket and retrieving the marijuana. Thus, we can conclude from the record before us only that Eissler did not pat-down the outer portion of Adams's pocket to determine if a weapon was present and he did not inadvertently discover the marijuana in the pocket so as to implicate the "plain-feel" doctrine. Therefore, when Eissler reached into the front pocket of Adams's pants, he went beyond the general protective search allowed by Terry and was conducting an illegal warrantless search.
Additionally, we note that there is nothing in the record to establish probable cause to support a search of Adams beyond the scope of Terry
without a warrant.
 "`Whether there is probable cause to merit a warrantless search and seizure is to be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Probable cause exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched." Sheridan v. State, 591 So.2d 129, 130 (Ala.Cr.App. 1991).'"
Woods v. State, 695 So.2d 636 (Ala.Cr.App. 1996), cert. denied,695 So.2d 643 (Ala. 1997), quoting State v. Stallworth, 645 So.2d 323,325 (Ala.Cr.App. 1994).
Mitchum testified that he smelled marijuana in the car.[3]
Additionally, Mitchum stated that Williams told him that he had smoked marijuana. Testimony indicated that Adams did not speak to the officers. Additionally, there was no testimony that the object that Eissler felt in Adams's pocket felt like marijuana. Thus, although the record supports a finding of probable cause to search Williams and the car, the facts and circumstances were not sufficient to establish probable cause to conduct a search of Adams's pocket that exceeded the scope of Terry without a warrant.
The trial court erred in denying Adams's motion to exclude the unlawfully seized *Page 578 
marijuana. Therefore, Adams's conviction for second-degree possession of marijuana is reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMillan and Cobb, JJ., concur; Long, P.J., dissents with opinion; Baschab, J., joins dissent.
[1] Testimony did not indicate whether Williams had been smoking marijuana in the car that evening or on a prior occasion. Additionally, we note that the record did not indicate that Williams had smoked the marijuana with Adams.
[2] Adams renewed his objection by entering a specific objection at the conclusion of the State's case in a motion for a judgment of acquittal; he alleged that the evidence removed from his pocket should have been excluded because the search and seizure were unconstitutional pursuant toTerry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] Mitchum did not specify that he smelled the odor of burned marijuana. See New Jersey v. Vanderveer, 667 A.2d 382, 384 (N.J.App. 1995), in which that court stated:
 "[A]n odor of unburned marijuana creates an inference that marijuana is physically present in the vehicle. An odor of burnt marijuana creates an inference that marijuana is not only physically present in the vehicle, but that some of it has been smoked recently. The suspected marijuana could reasonably have been located in the passenger compartment and/or on the person of the occupants of the vehicle."