COBB, Judge.
Melvin Vinson, Jr., was tried by a jury and adjudicated guilty of the unlawful distribution of a controlled substance and unlawful possession of a pistol after having been convicted of a crime of violence, see § 13A-12-211 and § 13A-ll-72(a), Ala. Code 1975. Pursuant to the Habitual Felony Offender Act, Vinson was sentenced to 10 years’ imprisonment for his conviction for the unlawful distribution of a controlled substance, and was ordered to pay $100 to the Alabama Crime Victims Compensation Commission, and was fined $1,000 drug-user fee to be retaxed if he completes a drug-rehabilitation program. Upon application of enhancements for the distribution of a controlled substance within three miles of a school or public housing project, see § 13-12-250 and § 13A-12-270, Ala. Code 1975, Vinson was sentenced to an additional 10 years in prison.
For his conviction for the unlawful possession of a pistol by someone previously convicted of a crime of violence, the judge sentenced Vinson to five years in prison and ordered Vinson to pay $100 to the Crime Victims Compensation Commission. The two sentences are to run concurrently. This appeal follows.
This case presents a troubling fact situation, which caused the trial court to grant the appellant’s motion to suppress as to evidence seized as the result of a stale search warrant,[1] but not as to evidence obtained contemporaneous with the pat-down of the appellant. We reverse and remand.

*224
Facts

Two college students were apprehended for selling drugs; they cooperated with police and disclosed that Melvin Vinson was their drug source. On November 21, 1994, as a result of the information provided by the college students, the officers obtained and executed a search warrant for Melvin Vinson’s residence. The affidavit in support of the search warrant stated that the college students told Officer Will-ingham that on November 11, 1994, they had gone to Vinson’s house and were given one pound and three ounces of marijuana on consignment. (R. 30.)
Agent Warren and three other officers went to Vinson’s residence around 8:00 p.m. to conduct their search. (R. 184.) The officer knocked on the door; there was no answer. The officers contacted the apartment manager and secured a key, which they used to enter the apartment. (R. 27.) No one was in the apartment when the officers began the search. (R. 27.) While the officers were conducting the search, they received a telephone call from another agent who told them Vinson had been in Tuscaloosa and was on his way back to Birmingham. (R. 28.)
As the officers were searching Vinson’s residence, they were notified over the radio that a white male was walking up the steps to the back door. (R. 28.) Vinson took one step into his dark apartment and was confronted by four officers who identified themselves as the police. (R. 184.) Vinson threw his hands into the air and dropped a brown leather satchel. Although there was a discrepancy in the record as to exactly where Vinson dropped the leather satchel, it was dropped close to Vinson’s feet, either inside the apartment or outside at the doorsteps of the apartment.
Two officers secured Vinson by taking him by the arm, performing a patdown to ensure he did not have any weapons on his person, and then sat him down. (R. 179, 184.) Officer Warren testified that after Vinson was secured by the two officers, he “picked up the brown satchel that was there and located a handgun in it.” (R. 184-85.) Officer Warren testified that he did not know if he unzipped the bag or not, but he did remember that the bag had to be unzipped. (R. 185.) Officer Warren stated that Vinson was on the porch about half an arm’s length from the door when he dropped the bag. (R. 186.)
Vinson immediately began to make spontaneous voluntary statements as to where he had been and what he had been doing. (R. 190.) The officer testified at trial that “[Vinson] said that he had gotten back from Tuscaloosa and went into two college kids’ apartment and took their property that was in the car.” (R. 191.) The officer stopped him, told him to calm down, and read him his Miranda rights. (R. 191.) Vinson continued to talk. He told the officer that he had gone to Tuscaloosa to see two college kids who owed him $2,100 for some marijuana he had “fronted” them. (R. 191.) However, he said that the students were not home, and because Vinson was unable to collect his money, he decided to take an electric guitar and other electrical equipment from them. Vinson also admitted that he owed money to his supplier. Vinson was afraid his supplier would kill him if he did not get the money. (R. 193.)
Vinson gave the police oral consent to search his vehicle to retrieve the stolen items. Vinson agreed to cooperate with police, but he later refused to cooperate. (R. 194, 195.) After searching records at the National Crime Information Center, the police discovered that Vinson should not have been in possession of a firearm. Several weeks later Vinson was charged and arrested for violating § 13A-11-72, *225 “Certain persons Forbidden to Carry a Firearm.” (R. 195-96.)
Before the trial, the court held a hearing on Vinson’s motion to suppress the evidence seized as a result of the search warrant. Vinson sought to suppress the drug paraphernalia found in his apartment, the pictures taken at the residence, the gun found in his possession, and the statements he made voluntarily during the search. The judge granted, in part, defense’s motion to suppress because he believed that the warrant was deficient and did not contain enough information to support, alternatively, a search based on a good-faith exception. (R. 67.) The judge concluded that the information in the warrant was stale, in that the warrant was not executed within 72 hours of the alleged seeing of any controlled substance within the residence. (R. 67-68.) The affidavit in support of the search warrant stated that drugs were observed in Vinson’s residence on November 11,1994; however, the search warrant was not executed until 8:00 p.m. on November 21, 1994. (C-145-52.) Thus, the trial court held that the search warrant was insufficient.
However, the trial court suppressed only the marijuana, the pictures, and the pipe found in Vinson’s home. The court did not suppress the gun or the statements Vinson made to the police while they were in his home. The court reasoned that because the officers were outside the home when they confronted Vinson, they had a legitimate right to search the bag containing the gun Vinson apparently dropped when the police approached him. (R. 68.) The court also held that Vinson’s statements were admissible because they were made voluntarily after he had been given a Miranda warning. (R. 71.)
I.
Vinson argues on appeal that the trial court erred in denying his motion to suppress the pistol found at his residence and the voluntary statements he made when his residence was being searched by police. Vinson contends that the police obtained and executed a search warrant for his apartment based on information that the trial court ruled was stale and that, therefore, the warrant was not supported by probable cause. Specifically, Vinson asserts that the pistol was in a closed container and was within the curtilage of his home; therefore, he asserts, it was obtained pursuant to the invalid search warrant and should be suppressed.
The State argues that the trial court properly denied Vinson’s motion to suppress in regard to the pistol found in Vinson’s possession. The State asserts that because the pistol was located outside the apartment, it was not found pursuant to the execution of the search warrant. Furthermore, the State also argues that the officers had a legitimate right to search the bag and to seize the gun inside the bag because Vinson had abandoned the property. The State contends that because the officers were forced to confront Vinson upon his return home, they had every right to search Vinson and his belongings in order to secure him and to protect themselves, rather than allow Vinson to remain outside of the home as a possible threat to their safety.
A trial judge’s decision concerning a motion to suppress will not be reversed on appeal unless it is “ ‘manifestly contrary to the great weight of the evidence.’ ” Ex parte Matthews, 601 So.2d 52, 53 (Ala.1992)(quoting Williams v. State, 456 So.2d 852, 855 (Ala.Crim.App.1984)). In reviewing the trial judge’s decision, this court “must make all reasonable inferences and credibility choices in support of the trial court’s ruling.” Allen v. State, 689 So.2d 212, 216 (Ala.Crim.App. *226 1995). See also Loggins v. State, 771 So.2d 1070 (Ala.Crim.App.1999).
Vinson argues that the pistol was seized pursuant to the invalid search warrant because it was located within the cur-tilage of his home. At common law, the concept of curtilage extended the same protection under the law of burglary to the area immediately surrounding a dwelling house as was afforded the house itself. United States v. Dunn, 480 U.S. 294, 299, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). There are four factors to determine if an area is included within the curtilage of the home: “ ‘[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is used, and [4] the steps taken by the resident to protect the area from observation by people passing by.’ ” Ex parte Hergott, 588 So.2d 911, 915 (Ala.1991)(quoting United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)). “Therefore, it is insufficient to rely on one factor, such as proximity, to determine if the area searched was within the curtilage of the home.” Ex parte Hergott, 588 So.2d at 915.
It is certainly reasonable to conclude that the area on Vinson’s back porch is within the curtilage of his home, especially when an officer testified that when Vinson dropped the bag, he was on the wooden porch about “half an arm’s length” from the door.
Furthermore, Vinson argues that the pistol was discovered in a “closed container,” and, therefore, that it was found pursuant to the invalid warrant. The general principle is that closed packages and containers may not be searched without a warrant. United States v. Ross, 456 U.S. 798, 812, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). “ ‘[A]ny container situated within residential premises which is the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal an item of the kind portrayed in the warrant.’ ” Dees v. State, 575 So.2d 1225, 1228 (Ala.Crim.App.1990)(quoting United States v. Gray, 814 F.2d 49, 51, (1st Cir.1987)); see also, United States, v. Young, 909 F.2d 442, 444 (11th Cir.1990).
The gun was found in a closed leather satchel, which the officer had to unzip to discover the gun. In order for the search of the satchel to be lawful, the officers were required to have a search warrant. In this case, the officers did have a search warrant, but that warrant was later determined to be invalid. Therefore, the search of the satchel was illegal because it was conducted pursuant to an invalid warrant that gave the officers no authority to search the satchel.
Another factor that should be considered is “whether the danger to the police justifying the seizure still existed once the officer had custody of the container. If the exigency was gone, a search warrant must be obtained before it may be opened.” United States v. Flippin, 924 F.2d 163, 166 (9th Cir.1991).
Vinson took one step into his dark apartment and was confronted by the four police officers. Vinson dropped the zipped leather satchel containing the gun, and was then secured by two police officers before a third officer had the opportunity to open the leather satchel. It is clear that in this case no exigent circumstances were present, and this satchel should not have been searched without a valid warrant.
Furthermore, the judge granted Vinson’s motion to suppress based on the staleness of the warrant; therefore, to be admissible any evidence obtained must fall *227 within one of the exceptions to search without a warrant.
“ ‘Warrantless searches are per se unreasonable, unless they fall within a recognized exception. Ex parte Hilley, 484 So.2d 485 (Ala.1985). Those exceptions include: objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968) ] “stop and frisk” situation. Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Where a search is executed without a warrant, the burden falls upon the State to show that the search falls within an exception. Kinard, v. State, 335 So.2d 924 (Ala.1976).’ ”
Grace v. State, 683 So.2d 17, 22 (Ala.Crim.App.1996)(quoting Ex parte Tucker, 667 So.2d 1339, 1343 (Ala.1995)); see also, Chevere v. State, 607 So.2d 361 (Ala.Crim.App.1992).

A. Stop and Frisk

“Under Terry, the lawful scope of a protective patdown is limited ‘to those areas in which a weapon may be placed or hidden.’ Michigan v. Long, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). ‘The sole justification’ of the patdown under Terry is ‘the protection of the police officer and others nearby.’ 392 U.S. at 29, 88 S.Ct. 1868. If a patdown exceeds the bounds of what is necessary to determine whether the suspect is armed, it amounts to the sort of exploratory search that Terry expressly refuses to authorize, see 392 U.S. at 25-30, 88 S.Ct. 1868, and the fruits of the search must be suppressed. Sibron v. New York, 392 U.S. 40, 65-66, 88 S.Ct. 1889, 20 L.Ed.2d 917, (1968). See e.g., Ford v. State, 680 So.2d 948, 951 (Ala.Crim.App. 1995), cert. denied, 680 So.2d 952 (Ala.1996).”
Warren v. State, 783 So.2d 74, 81 (Ala.Crim.App.1998).
This court has determined that police officers have a right to conduct a protective patdown of a suspect, regardless of the facts giving rise to probable cause to search him. In order to protect themselves, the police have a right to frisk for weapons. “ ‘However, such a search “is limited in scope to a ‘patdown’ of the suspects’ outer clothing and to seizure of hard objects whose size and shape give the officer probable cause to believe they are weapons.” ’ ” Martin v. State, 695 So.2d 141, 143 (Ala.Crim.App.1996)(quoting Smith v. State, 292 Ala. 120, 289 So.2d 816, 818 (1974)).
When Vinson arrived home to find four police officers searching his residence, he raised his hands and dropped a zipped leather satchel. In this case, the officers went beyond the bounds permitted by a lawful stop-and-frisk search. The officers performed a patdown of Vinson in his own home and ensured Vinson was secure. It was not necessary for the officers to unzip and search the leather satchel that was no longer in Vinson’s immediate possession.

B. Search Incident to Lawful Arrest.

The distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons is that a search for weapons in the absence of probable cause to arrest must be limited to what is necessary to discover weapons that might be used to harm the officer or others nearby; a search incident to an arrest, on the other hand, can “involve a relatively extensive exploration of the person.” Mathews v. State, 534 So.2d 1129, 1131 (Ala.Crim.App.1988)
*228 “ ‘When police officers want to search a person’s home they must have either a search warrant or a knowing, voluntary permission, unless the search is incidental to a lawful arrest or there are other circumstances, not present in this case, which justify a departure from the rule.” United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 69 (1951); see Duncan v. State, 278 Ala. 145, 157-58, 176 So.2d 840, 851 (1965); see also Waldron v. United States, 219 F.2d 37, 39 (D.C.Cir.1955). In this case, Vinson was not arrested until several weeks after the search of his residence when the police conducted a search through the National Crime Information Center and discovered that Vinson should not have been in possession of a firearm. (R. 195-96.) Therefore, this search was not pursuant to a lawful arrest.

C. Plain View

“ ‘ “Although an officer may seize contraband which is in plain view without obtaining a warrant, this doctrine applies only when the officer has a legal right to be at his viewpoint.” ’ ” State v. Otwell, 733 So.2d 950, 953 (Ala.Crim.App.1999) (quoting Duck v. State, 518 So.2d 857, 859 (Ala.Crim.App.1987)). The police were in Vinson’s home on a search warrant the trial judge held to be invalid. The police did not have a legal right to be in Vinson’s home; therefore, the plain view exception cannot be applied.
II.
Next, Vinson contends that trial court should have suppressed statements he made to police voluntarily the day of the search. Vinson specifically argues that the statements were the “fruit of the poisonous tree” because the statements resulted from a search warrant obtained without probable cause, and are thus subject to the exclusionary rule. The fruit-of-the-poisonous-tree doctrine dictates that an unlawful search taints not only the evidence obtained at the search, but facts discovered by a process initiated by the unlawful search. See Duncan v. State, 278 Ala. 145, 157-58, 176 So.2d 840, 866 (1965). Vinson’s voluntary statements resulted from the execution of an invalid search warrant; therefore, they should have been inadmissible in evidence because they are “the fruits of the poisonous tree.” See Moore v. State, 650 So.2d 958, 964 (Ala.Crim.App.1994)(citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Furthermore, Vinson’s voluntary statements were the product of a warrantless search and seizure that were not within any of the exceptions to the warrant requirement. See Ex parte Tucker, 667 So.2d 1339, 1349 (Ala.1995). Therefore, because the search and seizure were illegal, the trial judge should have granted Vinson’s motion to suppress the pistol and the voluntary statements he made to police.
Vinson raises six other issues on appeal that we do not need to address given the above holding. For the foregoing reasons, the judgment of the trial court is reversed and the case remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
LONG, P.J., and McMILLAN and FRY, JJ., concur; BASCHAB, J., concurs in the result.

. The information provided in support of the search warrant was 10 days old.