28 So.3d 29 (2009)
B.A.H.
v.
STATE of Alabama.
CR-07-2236.
Court of Criminal Appeals of Alabama.
May 1, 2009.
Rehearing Denied May 29, 2009.
Certiorari Denied August 14, 2009.
Alabama Supreme Court 1081191.
*30 Christopher Gene Childers, Florence, for appellant.
Troy King, atty. gen., and William D. Little, asst. atty. gen., for appellee.
KELLUM, Judge.[1]
The appellant, B.A.H., was adjudicated delinquent after pleading guilty to the underlying charge of unlawful possession of marijuana, a violation of § 13A-12-214, Ala.Code 1975. B.A.H. was ordered to serve two weekends at the Boy's Attention Home. Before entering his guilty plea, B.A.H. reserved the right to appeal the trial court's denial of his motion to suppress certain evidence.
On June 18, 2008, Officer Ira Davis of the Florence Police Department initiated a traffic stop of a sport-utility vehicle ("an SUV") for a violation of the city's noise ordinance. Four people were inside the SUV; B.A.H. was in the front passenger seat. The driver got out of the vehicle and Officer Davis began writing her a citation. Officer Davis approached the SUV to talk with the passengers. B.A.H. asked the officer if he could get out of the car to buy a drink from the gasoline service station where the SUV had been pulled over. Officer Davis testified that B.A.H. "seemed to want to be anywhere else other than where he was." (R. 7.) Officer Davis told B.A.H. that he could exit the vehicle to go inside the store, but that he would be subject to a patdown. Officer Davis testified he was concerned for his safety at this point. B.A.H. told the officer he was not going to get out of the vehicle because he did not want to undergo a patdown. B.A.H.'s answer, along with his subsequent nervous demeanor and fidgeting "sent up a red flag in [Officer Davis's] mind." (R. 10.) Given the circumstances, Officer Davis suspected that B.A.H. might have a weapon on his person, so he asked B.A.H. to get out of the vehicle and lift his shirt so *31 Officer Davis could see if he had a weapon in the waistband of his pants. B.A.H. complied and Officer Davis observed a clear, plastic bag containing marijuana hanging from his front pocket. B.A.H. was arrested and charged with second-degree possession of marijuana.
B.A.H. filed a motion to suppress the marijuana because, he alleged, it was the product of an illegal search. On August 20, 2008, the trial court held a hearing on B.A.H.'s motion to suppress. Officer Davis testified to the aforementioned facts for the State. B.A.H. presented no evidence in opposition. B.A.H. argued that the search by Officer Davis was improper because, he said, the officer did not have reasonable suspicion sufficient to justify the search. Furthermore, B.A.H. argued that Officer Davis exceeded the scope of a Terry[2] stop and frisk by asking B.A.H. to lift his shirt in order to dispel the officer's suspicion that B.A.H. was armed. The trial court denied B.A.H.'s motion upon finding B.A.H. implicitly consented to the search by agreeing to lift his shirt in response to Officer Davis's request. B.A.H. then pleaded guilty after preserving the issues raised in his suppression motion. B.A.H. appealed.

I.
B.A.H. argues that the trial court erroneously denied his motion to suppress because, he says, Officer Davis's search was improper. Specifically, B.A.H. argues that Officer Davis had insufficient reasonable suspicion to conduct a patdown because, based on the nature of the traffic stop, Officer Davis could not have reasonably suspected that he might uncover evidence of a more serious crime. Additionally, B.A.H. argues that Officer Davis did not have a reasonable suspicion that B.A.H. had committed a crime or that he was in the course of committing a crime, nor did he have a reasonable suspicion that B.A.H. was armed and dangerous.
"`This Court reviews de novo a circuit court's decision on a motion to suppress evidence when the facts are not in dispute.' See, State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999)." State v. Davis, 7 So.3d 468, 469-70 (Ala.Crim.App.2008). Here, the facts are undisputed; Officer Davis was the sole witness to testify at the suppression hearing, and his testimony was undisputed. Thus, the only issue before the Court is whether the trial court correctly applied the law to the facts presented at the suppression hearing, and we afford no presumption in favor of the trial court's ruling.
"`Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), law enforcement officers may conduct investigatory stops of persons or vehicles if they have a "reasonable suspicion that criminal activity has occurred, is occurring, or is about to occur..."' Davis, 7 So.3d at 470, quoting Wilsher v. State, 611 So.2d 1175, 1179-80 (Ala.Crim.App.1992) (internal citations omitted). When an officer stops a suspects pursuant to Terry, the officer "`"`is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.' [Terry,] 392 U.S. at 30, 88 S.Ct. 1868."'" Smith v. State, 884 So.2d 3, 9 (Ala.Crim.App.2003), quoting Riddlesprigger v. State, 803 So.2d 579, 582 (Ala. Crim.App.2001). In State v. Hails, 814 So.2d 980 (Ala.Crim.App.2000), this Court explained the standards by which any Terry search would be judged:

*32 "`Police may conduct a patdown search without a warrant if, under the totality of the circumstances, the officer has an articulable, reasonable suspicion that a person is involved in criminal activity and that he is armed. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reasonableness of the search is measured objectively. If a reasonably prudent person would believe that his safety, or the safety of others, is endangered, he may conduct a limited search of outer clothing to discover any weapons. Id. at 27, 88 S.Ct. 1868.'
"United States v. Raymond, 152 F.3d 309, 312 (4th Cir.1998). `And in determining whether the officer acted reasonably in such circumstances, due weight must be given ... to the specific reasonable inference which he is entitled to draw from the facts in light of his experience.' Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)."
814 So.2d at 986.
This Court has recognized that a traffic stop is "`"more analogous" to the brief investigative detention authorized in Terry'" than custody traditionally associated with a felony arrest. Sides v. State, 574 So.2d 856, 858 (Ala.Crim.App.1990), quoting Pittman v. State, 541 So.2d 583, 585 (Ala.Cr.App.1989), quoting in turn Berkemer v. McCarty, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). In stopping a vehicle for a traffic violation, a police officer has, in Fourth Amendment terms, seized the driver, Cains v. State, 555 So.2d 290, 292 (Ala.Crim.App.1989), quoting Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), as well as any passenger, Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Furthermore, so long as the police officer has properly seized the occupants of the car, the officer may order the driver, Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), or a passenger, State v. Hails, 814 So.2d 980 (Ala.Crim.App.2000), cert. denied, 814 So.2d 988 (Ala.2001), recognizing Maryland v. Wilson, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), out of the car without violating the Fourth Amendment. See, State v. Abner, 889 So.2d 52, 53-54 (Ala.Crim.App.2004) (recognizing the applicability of Mimms and Wilson in Alabama).
When a police officer properly seizes a vehicle for a traffic violation, the police officer may not only order the driver out of the vehicle, but may also pat down the driver for weapons if the officer reasonably believes that the driver is armed and dangerous. Mimms, 434 U.S. at 112, 98 S.Ct. 330. Recently, the United States Supreme Court expanded the Terry traffic stop jurisprudence in Arizona v. Johnson, ___ U.S. ___, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), holding that, as with a driver suspected of carrying a weapon, a police officer may also order a passenger out of a vehicle and conduct a patdown of a passenger if the officer reasonably believes that the passenger is armed and dangerous. The Supreme Court explained:
"[I]n a traffic-stop setting, the first Terry condition  a lawful investigatory stop  is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person *33 subjected to the frisk is armed and dangerous."
___ U.S. at ___, 129 S.Ct. at 784 (emphasis added).
In Johnson, police officers pulled over a vehicle after a license-plate check indicated that vehicle's registration had been suspended for an insurance-related violation. As one officer approached the vehicle, she noticed that the passenger in the backseat, Johnson, turned around to watch the officers and stared at her as she approached the vehicle. Johnson had a police scanner in his pocket and was wearing blue clothing, which the officer believed indicated his membership in the Crips, a violent street gang. Johnson informed the officer that he was from an area that the officer knew was home to a Crips gang. The officer suspected that Johnson might have a weapon on him based on his appearance and the answers he provided to her questions. The officer asked Johnson to step out of the car with the purpose of obtaining gang-related intelligence. The officer patted Johnson down after he got out of the car, felt a gun near his waist, and placed Johnson under arrest. ___ U.S. at ___, 129 S.Ct. at 784-85.
The lower courts found that Johnson was lawfully seized but reversed his conviction on the grounds that, before the frisk, the officer had no right to pat down Johnson for weapons because their discussion outside of the car was a "separate, consensual encounter." ___ U.S. at ___, 129 S.Ct. at 785, citing State v. Johnson, 217 Ariz. 58, 170 P.3d 667, 673 (Ariz.Ct. App.2007). The United States Supreme Court disagreed, explaining:
"A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable .... An officer's inquiries into matters unrelated to the justification of the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop. See, Muehler v. Mena, 544 U.S. 93, 100-101 (2005)."
Johnson, ___ U.S. at ___, 129 S.Ct. at 788.
The facts in this case closely mirror the facts in Johnson. Here, Officer Davis stopped the vehicle in which B.A.H. was a passenger for violating a noise ordinance. Before issuing a citation, Officer Davis approached the car to talk to the occupants. He testified that he developed a reasonable suspicion that B.A.H. was potentially armed and dangerous based on B.A.H.'s nervous demeanor, fidgeting in the face of questioning by the officer, and his admission that he didn't want "[Officer Davis] patting [him] down." (R. 7.) Officer Davis was entitled to draw inferences, in light of his experiences, from the facts he observed, and we are to give due weight to these inferences in determining their reasonableness. Hails, 814 So.2d at 986, citing Terry, 392 U.S. at 27, 88 S.Ct. 1868. Under the totality of the circumstances, it was not unreasonable for Officer Davis to conduct a patdown for weapons based on a reasonable suspicion that B.A.H. was armed and dangerous. Accordingly, pursuant to Johnson, Officer Davis's search of B.A.H., which was based upon a reasonable suspicion that B.A.H. was armed, was not unconstitutional.

II.
B.A.H. also argues that Officer Davis exceeded the permissible scope of the Terry stop by asking B.A.H. to raise his shirt. Specifically, B.A.H. argues to this court that Officer Davis was authorized under Terry only to conduct a patdown *34 of B.A.H.'s person and could not ask him to raise his shirt.
"The reasonableness of the search is measured objectively." Terry, 392 U.S. at 27, 88 S.Ct. 1868. We must give due weight to an officer's inferences, which are based upon his experiences. Hails, 814 So.2d at 986, citing Terry, 392 U.S. at 27, 88 S.Ct. 1868. "The reasonableness of such searches and seizures depends upon `a balance between the public interest and the individual's right to personal security.'" State v. Odom, 872 So.2d 887, 890 (Ala.Crim.App.2003), quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).
Officer Davis did not pat B.A.H. down after he asked B.A.H. to get out of the vehicle. Instead, Officer Davis asked B.A.H. to lift his shirt because, in his experience, the waist area is "normally where people put pistols." (R. 8.) When asked by defense counsel at the suppression hearing why he asked B.A.H. to lift his shirt instead of conducting a patdown, Officer Davis replied, "My basis was I'll meet him halfway. He didn't want me to pat him down, that's fine." (R. 12.)
During a Terry stop, the search conducted by a police officer "`"`is limited in scope to a "pat-down" of the suspects' outer clothing and to seizure of hard objects whose size and shape give the officer probable cause to believe they are weapons.'"'" Hails, 814 So.2d at 987, quoting Martin v. State, 695 So.2d 141, 143 (Ala.Crim.App.1996), quoting in turn Smith v. State, 292 Ala. 120, 289 So.2d 816, 818 (Ala.1974). "The police officer may intrude beneath the outer surface of the suspect's clothing only if the police officer feels an object he reasonably suspects may be a weapon." Ex parte James, 797 So.2d 413, 418-19 (Ala.2000), citing Terry, 392 U.S. at 30, 88 S.Ct. 1868.
Several federal courts of appeal have upheld as appropriate under Terry searches analogous to Officer Davis's search of B.A.H. in which no patdown took place. In United States v. Hill, 545 F.2d 1191 (9th Cir.1976), a police officer stopped the appellant on the street to ask if he had seen a person matching the description of a suspect in an armed robbery of a bank that look place in the area just a few minutes earlier. While talking with the appellant, the officer observed a large bulge in the appellant's waistband. The officer became reasonably suspicious that the appellant was carrying a weapon in his waist band, lifted the appellant's shirt, and found rolls of currency wedged into the appellant's waistband.
The United States Court of Appeals for the Ninth Circuit held that the district court properly denied the appellant's motion to suppress because, under the circumstances, the search was not "overly intrusive" and thus impermissible under Terry. 545 F.2d at 1193. The Court explained:
"Terry, supra, confines a self-protective search for weapons to an intrusion reasonably designed to discover instruments of assault. It precludes general exploratory searches. In the instant case the officer's investigation was wholly confined to the area of the bulge in question and was a direct and specific inquiry. As such it did not transcend the permissible bounds established by Terry. ...
"Finally, Terry does not in terms limit a weapons search to a so-called `pat down' search. Any limited intrusion designed to discover guns, knives, clubs or other instruments of assault are permissible. The raising of the shirt in the instant case is well within the boundaries established by Terry."
*35 545 F.2d at 1193. See, e.g., United States v. Baker, 78 F.3d 135 (4th Cir.1996) (citing Hill to support the conclusion that the officer was not limited to a patdown under Terry but could ask the suspect to raise his shirt in order for the police officer to find out if the appellant was armed); United States v. Reyes, 349 F.3d 219 (5th Cir. 2003) ("[T]he raising of suspect's shirt by a law enforcement officer does not violate the boundaries established in Terry," citing Hill and Baker)
Under the circumstances, Officer Davis's request for B.A.H. to lift his shirt in lieu of conducting a patdown complies with the narrow focus and limited scope of Terry. In this situation, Officer Davis was not attempting to conduct a full-blown search nor did he exceed the boundaries of a typical Terry, stop-and-frisk situation; he simply gave B.A.H. another manner by which B.A.H. could demonstrate that he was not carrying a weapon.
B.A.H. points to various cases in which this Court has found that a police officer exceeded the permissible bounds of Terry to support his argument that Officer Davis's request that B.A.H. lift his shirt so that the officer may inspect B.A.H.'s person for weapons was constitutionally impermissible. However, each of these cases is readily distinguishable from the case at hand. In Davis v. State, 901 So.2d 759 (Ala.Crim.App.2004), and Ex parte Tucker, 667 So.2d 1339 (Ala.1995), otherwise valid searches in which officers properly made the appellants remove objects from their pockets  a contact-lens case and a 35-mm. film canister, respectively  became unreasonable when the officers opened the containers without a warrant or without justification under an exception of a warrantless search. In Martin v. State, 695 So.2d 141 (Ala.Crim.App.1996), the police officer lacked reasonable suspicion that the appellant was armed and dangerous and was thus not justified in asking her to empty her pockets or conduct a Terry patdown. Unlike the police in Davis and Tucker, Officer Davis did not conduct a more invasive and thus improper search based on the feel of a suspicious object on the suspect's person. Unlike the officer in Martin, Officer Davis conducted the Terry stop of his suspect, B.A.H., based on a reasonable suspicion that the suspect was armed and dangerous.
B.A.H. likewise claims that Officer Davis's actions were analogous to the unconstitutional search carried out by an officer in Ford v. State, 680 So.2d 948 (Ala. Crim.App.1995). In Ford, the Court found that the officer was looking for narcotics and not a weapon during a Terry stop. Accordingly, the officer's search was deemed invalid because, "[w]hen [the officer], told the appellant to `take it out,' referring to the contents of his shirt pocket, he went beyond a general protective exploratory search approved by Terry and was blatantly conducting a illegal warrantless search." 680 So.2d at 951 (emphasis added).
None of the facts at hand indicate that Officer Davis was suspicious of drug activity or that B.A.H. had drugs on his person. Officer Davis's testimony indicated that he was only trying to dispel his reasonable suspicions that B.A.H. was in fact carrying a weapon. The record indicates that Officer Davis asked B.A.H. to raise his shirt only because Davis was concerned B.A.H. was armed, because he knew based on his experience that people generally store weapons in the waistband of their pants, and because he was trying to abide by B.A.H.'s wish that Officer Davis not pat him down. Unlike the police officers in Davis, Tucker, Martin, and Ford, Officer Davis did not conduct a blatantly illegal warrantless search, but rather stayed *36 within the constitutional bounds of conducting a general protective exploratory search. Under these facts, we believe that Officer Davis did not exceed the scope and boundaries of the Fourth Amendment set forth by Terry and subsequent Alabama caselaw. Accordingly, we hold that Officer Davis did not carry out an unconstitutional search under Terry when he asked B.A.H. to lift his shirt in order to dispel Officer Davis's reasonable suspicion that B.A.H. was armed.

III.
B.A.H. also argues that the trial court erred in finding that he implicitly consented to Officer Davis's request to search him. Specifically, he argues that implied consent can not be found in his compliance with Officer Davis's request for him to get out of the vehicle and submit to a search by raising his shirt. B.A.H. argues to this Court that his actions were mere submission to police authority and that his consent was not knowingly, intelligently, and freely given.
In Ex parte Tucker, we explained:
"Warrantless searches are per se unreasonable, unless they fall within a recognized exception. Ex parte Hilley, 484 So.2d 485 (Ala.1985). Those exceptions include: objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a Terry `stop and frisk' situation. Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Where a search is executed without a warrant, the burden falls upon the State to show that the search falls within an exception. Kinard v. State, 335 So.2d 924 (Ala.1976)."
667 So.2d at 1343.
As stated, Officer Davis properly seized B.A.H. when he stopped the vehicle in which B.A.H. was a passenger for a traffic violation. Once B.A.H. was seized, Officer Davis developed a reasonable suspicious that B.A.H. was armed. Pursuant to the United States Supreme Court's extension of Terry and Mimms in Arizona v. Johnson, Officer Davis properly removed B.A.H. from the vehicle to search him for weapons. Accordingly, we hold that Officer Davis did not need B.A.H.'s consent to search him because the warrantless search was proper under both Terry and Johnson. Thus we need not reach the question whether B.A.H. consented either actually or implicitly to Officer Davis's request to search.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
WISE, P.J., and WELCH and WINDOM, JJ., concur.
NOTES
[1] This case was originally assigned to another judge on the Court of Criminal Appeals; it was reassigned to Judge Kellum on January 20, 2009.
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).