884 So.2d 3 (2003)
Lorenzo SMITH
v.
STATE of Alabama.
CR-02-0697.
Court of Criminal Appeals of Alabama.
August 29, 2003.
Opinion on Return to Remand October 31, 2003.
Rehearing Denied December 19, 2003.
*4 Tommy Ray Scarborough, Dothan, for appellant.
William H. Pryor, Jr., atty. gen., and J. Thomas Leverette, asst. atty. gen., for appellee.
SHAW, Judge.
Lorenzo Smith was indicted for unlawful possession of cocaine, a controlled substance, in violation of § 13A-12-212, Ala. Code 1975. On December 5, 2002, Smith entered a guilty plea to the charged offense, and he was sentenced to three years' imprisonment. Before entering his guilty plea, Smith filed a motion to suppress certain evidence. After conducting a hearing on the motion to suppress, the trial court denied the motion.
Smith appeals, contending that the trial court erred in denying his motion to suppress. However, for the reasons discussed below, this case is due to be remanded for the trial court to determine whether there was a preexisting agreement *5 between the parties that Smith had reserved the suppression issue for appeal.
At the December 5, 2002, hearing, the following occurred:
"THE COURT: You are Lorenzo Smith?
"[SMITH]: Yes, sir.
"THE COURT: Mr. Smith, you are here in case number CC-2001-999, where you are charged with unlawful possession of a controlled substance. That is a Class C felony, for which you can receive from a year and a day up to 10 years and a fine of up to $5,000. Do you understand that range of punishment?
"[SMITH]: Yes, sir.
"THE COURT: How old are you?
"[SMITH]: I'm 52.
"THE COURT: How much school have you completed?
"[SMITH]: Eleventh.
"THE COURT: Are you undergoing any psychiatric treatment or having any mental or emotional problems?
"[SMITH]: No, sir.
"THE COURT: Are you under the influence of any drugs, medication, or alcohol today?
"[SMITH]: No, sir.
"THE COURT: Have you had enough time to discuss this case with your attorney, for him to advise you of your rights and for you to tell him your version of the facts?
"[SMITH]: Yes, sir.
"THE COURT: Have you had explained to you the rights which you will give up by entering a plea of guilty as set out on the explanation of rights form?
"[SMITH]: Yes.
"THE COURT: Have you signed the form voluntarily, and do you understand it?
"[SMITH]: Yes, sir.
"THE COURT: Has anyone threatened you, harassed you, or tried to make you plead guilty in any way?
"[SMITH]: No, sir.
"THE COURT: Has anyone offered you any reward or any inducement to get you to plead guilty?
"[SMITH]: No.
"THE COURT: Has anyone promised you that you would get probation or a suspended sentence if you pled guilty?
"[SMITH]: No, sir.
"THE COURT: Based upon what you have told me here today, I find that your offer to plea[d] guilty is willingly, knowingly and intelligently made, and I will accept your plea if the offer given.
"[Prosecutor], could you give the recitation of facts giving rise to the indictment in this case?
"[PROSECUTOR]: Judge, the State believes at trial Officer David Elkins with the Dothan Police Department was on patrol back on May 3, 2001. He was called to North Appletree Street to meet with Officer Phillip Wise, who had told himOfficer Wise informed Elkins that he was investigating a suspicious person. During the investigation, he recovered several pieces of off-white compressed material that, afterwards, was turned over to the Department of Forensic Sciences, tested positive for the presence of cocaine that was located under a hat on the defendant's head. And all of that occurred here in Houston County. And we believe at trial he would be found guilty of possession of a controlled substance, to wit, cocaine.
"THE COURT: Based upon the recitation of facts, I find that there is a *6 foundation for the indictment in this case. And are you familiar with the contents of the indictment?
"[SMITH'S ATTORNEY]: Yes, sir. I have been over it with him, and he understands what he is charged with.
"THE COURT: And do you waive the reading of the indictment?
"[SMITH'S ATTORNEY]: Yes, sir. We waive the reading.
"THE COURT: To the indictment in this case, how do you plead, guilty or not guilty?
"[SMITH]: Guilty.
"THE COURT: Upon your plea of guilty, it is the judgment of the Court that you are guilty. Do you have anything to say as to why a sentence of law should not be pronounced upon you at this time?
"[SMITH'S ATTORNEY]: Judge, I do have somethingI don't know if this is the right time. I do want to reserve the right to appeal the denial of the suppression hearing [sic] we had last week.
"THE COURT: Yeah. That's right. It rang a bell.
"[SMITH'S ATTORNEY]: But I do specifically want to reserve that right.
"THE COURT: Yeah. That is one of the bases for doing that.
"[SMITH'S ATTORNEY]: Yes, sir.
"THE COURT: And that right is reserved.
"[SMITH'S ATTORNEY]: Yes, sir. Nothing else, Judge."
(R. 4-7, December 5, 2002, hearing.)
In Rivers v. State, 666 So.2d 33, 33-34 (Ala.Crim.App.1994), this Court stated:
"The transcript of the plea hearing reveals that after the appellant informed the trial court that he pleaded guilty to both offenses and after the trial court had accepted his plea, the appellant's attorney stated: `I'd like to put on the record that this plea is entered, reserving the right to appeal the court's denial of the motion to suppress.' The trial judge then responded, `The court understands that.'
"In Prim v. State, 616 So.2d 381, 382-83 (Ala.Cr.App.1993), this Court explained that a defendant is required to reserve any issue on which he wishes to appeal before entering his guilty plea:
"`[B]ecause a guilty plea waives all non-jurisdictional defects in proceedings occurring before the plea, Martin [v. State, 579 So.2d 69, 70 (Ala.Cr.App. 1991)] and "a guilty plea represents a break in the chain of events which preceded it in the criminal process," Tollett [v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973)], an unconditional plea must be taken to represent the defendant's decision to forego any challenge to events occurring before the plea. If the defendant does not intend to forego such challenges, he must make that intent clear before he enters his plea.'
"(Emphasis added.)
"The appellant, citing Sawyer v. State, 456 So.2d 110 (Ala.Cr.App.1982), rev'd after record supplemented, 456 So.2d 112 (Ala.1983), requests that he be allowed to supplement the record or that we remand this cause to the trial court to allow the appellant to establish that the court and the district attorney were aware of his intent to appeal the adverse ruling on his motion to suppress. Because the record is unclear, we remand this case to the trial court. On remand, the trial judge is to supplement the record to reflect whether there was a pre-existing agreement among the parties that the appellant had reserved the suppression *7 issue for appeal. A return is to be filed with this Court within 45 days of this opinion."
On return to remand in Rivers, the trial court stated that the parties had agreed before the plea was entered that the appellant was reserving the suppression issue for appeal. Based on that finding by the trial court, this Court proceeded to review the merits of the issue.
In the present case, the record is unclear as to the meaning of the trial court's response of "Yeah. That's right. It rang a bell." (R. 7) to Smith's attorney's statement, "Judge, I do have somethingI don't know if this is the right time. I do want to reserve the right to appeal the denial of the suppression hearing we had last week." (R. 7.) Did the trial court's response mean that it remembered the suppression hearing or that it remembered that following the suppression hearing Smith's attorney had indicated his desire to reserve the right to appeal the denial of his motion to suppress? In light of Rivers, we remand this cause for the trial court to supplement the record to clarify whether there was a preexisting agreement between the parties that Smith was reserving the right to appeal the suppression issue. Due return shall be filed with this Court no later than 28 days from the date of this opinion.
REMANDED WITH INSTRUCTIONS.
McMILLAN, P.J., and COBB, J., concur. BASCHAB, J., dissents, with opinion, which WISE, J., joins.
BASCHAB, Judge, dissenting.
The holding of Prim is clear: A defendant who is entering a guilty plea must make clear his intent to reserve an issue for appeal before he enters his guilty plea. Further, this court has repeatedly held that it is the appellant's duty to provide for this court a complete record on appeal. See Gamble v. State, 791 So.2d 409 (Ala. Crim.App.2000); Wilson v. State, 727 So.2d 869 (Ala.Crim.App.1998); Knight v. State, 621 So.2d 394 (Ala.Crim.App.1993). Therefore, implicit in Prim is the requirement that a defendant make his intent to reserve an issue for appeal known, on the record, before he enters his guilty plea. Because the appellant did not make clear, on the record and before he entered his guilty plea, his intent to reserve the denial of his motion to suppress for appeal, he did not preserve his argument for review on appeal. Therefore, we should affirm the trial court's judgment.
I am also compelled to make the following observations. The court's holding in this case should not be interpreted as a signal that a remand will be granted in every case in which a defendant attempts to reserve an issue for review on appeal after he enters his guilty plea. Rather, the holding should be narrowly construed and strictly limited to those cases in which, on the face of the record, there is an ambiguity as to whether the defendant attempted to reserve his right to raise an argument on appeal before he entered his guilty plea.
WISE, J., concurs.

On Return to Remand
SHAW, Judge.
Lorenzo Smith was indicted for unlawful possession of a controlled substance, cocaine, in violation of § 13A-12-212, Ala. Code 1975. Smith entered a guilty plea to the charged offense and was sentenced to three years' imprisonment.
In an opinion issued on August 29, 2003, this Court remanded this case for the trial court to supplement the record to clarify whether there was a preexisting agreement *8 between the parties that Smith was reserving the right to appeal the suppression issue. See Smith v. State, 884 So.2d 3 (Ala.Crim.App.2003). On remand, the trial court stated that it recalled that "at the suppression hearing held several days before the guilty plea, [Smith] announced his intention, by and through his attorney, to reserve the right to appeal the suppression hearing issue upon [a] plea of guilty." (Supplemental record, C. 5.) Because it appears that Smith properly reserved the right to appeal the issue raised at the suppression hearing, we will now address the issues raised on appeal.
Before entering his guilty plea, Smith had filed a motion to suppress "all evidence and alleged contraband seized as a result of a search conducted on or about May 3, 2001." (C. 45.) In his motion to suppress, Smith contended that "[o]n May 3, 2001, [Smith] was lawfully at or around 502 N. Appletree Street, Dothan, AL, when agents or officers of the Dothan Police Department illegally and unlawfully stopped, detained, searched and arrested [Smith]." (C. 45.) Additionally, Smith contended that "even if there was probable cause to make an investigatory stop and a protective pat-down search, that any further search, including a search of [Smith's] cap, exceeded the scope of the pat-down search [and] amounted to an investigatory search without a warrant and, as such, is illegal." (C. 9.) After a hearing, the trial court denied Smith's motion to suppress.
Officer Phillip Wise[1] of the Dothan Police Department was the only witness who testified at the suppression hearing. Officer Wise testified that his assigned patrol area included 502 North Appletree Street in Dothan; that two popular night clubs at that time-Geno's and Mickey's-were located very near the 502 North Appletree Street property; that Pillar Parrish, the owner of the 502 North Appletree Street property, had spoken with him on several occasions about the problem he was experiencing with people congregating and/or trespassing on his property and that he was afraid that these people were engaging in illegal drug activity on his property; that Parrish had placed "no trespassing" signs on his property; and that Parrish had requested that Officer Wise keep an eye on the situation "to make sure that people weren't congregating back there if they didn't stay there and just to make sure they weren't up to no good." (R. 18.)
Officer Wise further testified that at approximately 9:45 p.m., on May 3, 2001, he was on patrol when he noticed "two individuals, a male and a female, [in the backyard of 502 North Appletree Street] huddled together" (R. 8); that when he pulled into the backyard, both individuals began walking awaytoward an apartment located on the property; that the two houses located on 502 North Appletree Street have been divided into apartments; that he knew most of the people that lived in those apartments and he knew that neither of the individuals he saw lived in one of the apartments; and that because he did not recognize either the man or the woman as someone who lived at those apartments, he decided to stop them because he "just wanted to ID them." (R. 8.) Officer Wise testified that the man he saw in the backyard of 502 North Appletree Street that evening was Smith; that he approached both individuals and "asked them what they were doing back in the backyard and who they were" (R. 10); that Smith replied that he was Lorenzo Smith and that he was doing "nothing" (R. 11); and that he patted Smith down for weapons because he noticed some red stains on Smith's clothes *9 that looked as if they could be blood. Officer Wise testified that as part of his patdown of Smith, he felt the baseball cap that Smith had on his head. Officer Wise testified that when he felt Smith's cap, he felt "[p]aper or something underneath [the cap]" so "just for [his] safety, [he] looked underneath the hat" and "found a brown folded-up piece of paper," that he "crinkled [the paper], like that," and that the "folded-up piece of paper ... had approximately three yellowish to white rocks inside." (R. 12-13; 30.) The rocks tested positive for cocaine, and Smith was indicted for unlawful possession of cocaine.

I.
First, Smith contends that the trial court erred in denying his motion to suppress the evidence seized as a result of Officer Wise's search because, he says, Officer Wise did not have sufficient grounds to justify a Terry[2] investigatory stop and patdown.
In Riddlesprigger v. State, 803 So.2d 579, 582 (Ala.Crim.App.2001), this Court stated:
"When an officer stops a person pursuant to Terry, the officer
"`"`is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.' 392 U.S. at 30, 88 S.Ct. at 1884-85."'
"New v. State, 674 So.2d 1377, 1378 (Ala.Crim.App.1995)(quoting Worthy v. State, 473 So.2d 634, 636 (Ala.Crim.App. 1985))."
In State v. Hails, 814 So.2d 980, 986 (Ala. Crim.App.2000), this Court stated:
"`Police may conduct a patdown search without a warrant if, under the totality of the circumstances, the officer has an articulable, reasonable suspicion that a person is involved in criminal activity and that he is armed. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reasonableness of the search is measured objectively. If a reasonably prudent person would believe that his safety, or the safety of others, is endangered, he may conduct a limited search of outer clothing to discover any weapons. Id. at 27, 88 S.Ct. 1868.'
"United States v. Raymond, 152 F.3d 309, 312 (4th Cir.1998). `And in determining whether the officer acted reasonably in such circumstances, due weight must be given ... to the specific reasonable inference which he is entitled to draw from the facts in light of his experience.' Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)."
(Emphasis added.)
As previously noted, the owner of the property had requested that Officer Wise keep an eye on his propertyhe had told Officer Wise that people were congregating and/or trespassing on his property and he was afraid that they were engaging in illegal drug activity. While patrolling that evening, Officer Wise noticed Smith and a female "huddled together" in the backyard of 502 North Appletree Street. (R. 8.) When he pulled into the backyard, the two individuals began walking away; he did not recognize them as residents of 502 North Appletree Street so he stopped them to investigate their identities and their reason for being in the backyard of 502 North Appletree Street. After noticing what appeared to be blood on Smith's clothes, he conducted a patdown for weapons. Officer Wise testified that the "sole *10 purpose" for the patdown was "officer safety." (R. 13.)
We find that under the totality of the circumstances it was not unreasonable for Officer Wise to make a Terry investigatory stop and patdown of Smith.

II.
Additionally, Smith contends that the trial court erred in denying his motion to suppress because, he says, even if Officer Wise's initial stop and patdown were justified, the search and seizure of the "folded-up piece of paper" Officer Wise found under Smith's cap exceeded the scope of the Terry search and amounted to an investigatory search without a warrant. (R. 13.) Specifically, Smith contends that the search of the contents of the "folded-up piece of paper" exceeded the scope of a Terry search and that the contraband seized as a result of that search should be suppressed because, he says, the nature of the "folded-up piece of paper" under Smith's cap did not give Officer Wise a valid reason to search the contents of the "folded-up piece of paper" in light of the fact that Officer Wise's crinkling of the paper did not reveal a weapon in the "folded-up piece of paper."
During the suppression hearing, Officer Wise testified to the following:
"[PROSECUTOR]: Was [Smith] wearing a cap?
"[OFFICER WISE]: Yes, sir.
"[PROSECUTOR]: Did you feel his cap
"[OFFICER WISE]: Yes, sir.
"[PROSECUTOR]:as a part of your patdown search?
"[OFFICER WISE]: Yes, I did, sir.
"[PROSECUTOR]: When you felt his cap, what, if anything, did you feel inside his cap?
"[OFFICER WISE]: I felt likeI felt as if there was paper or something underneath his hat. I didn't know what it was.
"[PROSECUTOR]: And what kind of weapon could he possibly, in your experience as a police officer, have concealed under his hat?
"[OFFICER WISE]: I have seen people have razor blades. I have seen people have just akind of like a nail, that'slike a punch or something. I have seen them have them in their hats. So, just for my safety, I looked underneath the hat.
"....
"[PROSECUTOR]: When you patted down his hat, I think you felt something in his hat?
"[OFFICER WISE]: Paper or something underneath it. I took it off and found a brown folded-up piece of paper, which had approximately three yellowish to white rocks inside. At that time, I detained the subject. And I used a field tester toI used the field tester to test the substance, which was field-tested positive for cocaine. The subject was then placed in the back of my car and [I] got the narcotics officers involved.
"....
"[SMITH'S ATTORNEY]: In response to [the prosecutor's] question, you said something about the hat. You took the hat off? Is that right?
"[OFFICER WISE]: I said I felt the hat, and it felt as if something was underneath it.
"[SMITH'S ATTORNEY]: And you felt the hat while it was on his head, didn't you?
"[OFFICER WISE]: I believe so, yes, sir.

*11 "[SMITH'S ATTORNEY]: And you felt something that felt like paper, didn't you?
"[OFFICER WISE]: It felt as if something was underneath his hat. It felt like a crinkled type paper, you know.
"[SMITH'S ATTORNEY]: Now, have you ever known paper as being used to be a weapon?
"[OFFICER WISE]: I have known people to wrap things in paper.
"....
"[PROSECUTOR]: [Smith's attorney] asked you if, when you searched his hat, did you feel something that felt like paper, and you stated that you did; is that correct?
"[OFFICER WISE]: Yes, sir.
"[PROSECUTOR]: When you felt his hat, and you felt something that felt like paper, why did you continue to search his hat?
"[OFFICER WISE]: To see if there was anything in his hat, or ifI felt thewhat felt like paper or something I mean, I am feeling something through a hat. And I didn't know exactly what it was. I just wanted an ID.
"[PROSECUTOR]: And you mentioned in response to [Smith's attorney's] question that, sometimes in your experience as a police officer, paper is used to wrap something. What kinds of things that could be dangerous to you has paper been used to wrap in your experience?
"[OFFICER WISE]: I have seen razor blades wrapped in paper. I have seen pipes wrapped in paper. Either one could be used, Your Honor.
"[PROSECUTOR]: In your experience as a police officer, when you felt this man's hat, and you felt paper under the hat, did that rule out in your mind the possibility that there was any weapon under his hat?
"[OFFICER WISE]: No, sir.
"....
"[SMITH'S ATTORNEY]: I mean, in your experience, a weapon could be carried under a hat. And what are those weapons?
"[OFFICER WISE]: I have seen pipes, glass pipes, and razor blades, straight razor blades.
"[SMITH'S ATTORNEY]: But we are talking about this night, May 3, 2001?
"[OFFICER WISE]: Yes, sir.
"[SMITH'S ATTORNEY]: On this night, did you feel a pipe in Mr. Smith's hat?
"[OFFICER WISE]: No. I feltI just felt his hat. I felt something underneath his hat.
"[SMITH'S ATTORNEY]: I am showing you a red hat.
"[OFFICER WISE]: Yes, sir.
"[SMITH'S ATTORNEY]: Was the hat you saw that night similar to this hat?
"[OFFICER WISE]: I can't say for sure. I think it was a baseball hat, yes. I don't know if it looked like this one.
"....
"[SMITH'S ATTORNEY]: All right. Was he wearing a baseball cap similar already to the one I am showing you today?
"[OFFICER WISE]: Possibly, yes.
"[SMITH'S ATTORNEY]: All right. You don't know?
"[OFFICER WISE]: Not for certain, no.
"[SMITH'S ATTORNEY]: This paper that you felt, was it in the brim of the hat, in the bib of the hat, or stuck up on the inside of the hat?

*12 "[OFFICER WISE]: It was on the top of the hat.
"[SMITH'S ATTORNEY]: Where?
"[OFFICER WISE]: On top, like on top of your head.
"[SMITH'S ATTORNEY]: Uh-huh.
"[OFFICER WISE]: Underneath the hat.
"[SMITH'S ATTORNEY]: So, if the paper was on top of his head, under his hat, did the paper that you felt have a pipe in it?
"[OFFICER WISE]: No, it didn't.
"[SMITH'S ATTORNEY]: It was softer to the touch, wasn't it?
"[OFFICER WISE]: It was soft to the touchthe paper was?
"[SMITH'S ATTORNEY]: Yes.
"[OFFICER WISE]: Yeah. I didn't feel of it. I just crinkled it, like that.
"[SMITH'S ATTORNEY]: And you didn't immediately draw your hand back, and say, oh, I got hurt; there is a weapon under there, did you?
"[OFFICE WISE]: No.
"[SMITH'S ATTORNEY]: You didn't get cut, did you?
"[OFFICER WISE]: No."
(R. 12-13; 24; 27-31.)
Officer Wise testified that during the Terry patdown, he found a razor blade in Smith's shirt pocket and that as part of the Terry patdown, he felt Smith's cap while it was on Smith's head and that he felt "something underneath [Smith's] hat" and that it was "something that felt like paper." (R. 12, 24.) Officer Wise stated that in his experience as a police officer, he has "known people to wrap things[, like razor blades,] in paper." (R. 24, 28.)
At the suppression hearing, the State argued the following:
"And Judge, we say, number one, this is not a Plain[-Feel] Doctrine case. We don't rely on the Plain[-Feel] Doctrine in this case. Secondly, those cases are different from the facts here. You can feel a pill bottle or a Tic Tac [breath mint] box, and you know it is a Tic Tac box or a pill bottle. You know it does not contain a weapon. But this officer testified he felt the hat, and he could not rule out the possibility of weapons being under the hat, just by feeling the hat. So, he was entitled to take the hat off and search the hat. And that is a big difference between the two. The pat of the hat, in this case, did not rule out any weapons as would a[pat] of a pill bottle or a Tic Tac bottle in the defendant's pocket. So, that is the big difference in this case."
(R. 38-39.) On appeal, the State argues that "Officer Wise was justified in removing the cap and in opening the folded paper because they both could have been concealing a razor blade." (State's brief at p. 8)(emphasis added).
We agree that when Officer Wise removed Smith's cap and searched it, he did not exceed the scope of the Terry patdown. See Riddlesprigger, 803 So.2d 579. However, we note that while Officer Wise testified that "[i]n [his] experience as a police officer, when [he] felt [Smith's] hat, and [he] felt paper under the hat, [it] did [not] rule out in [his] mind the possibility that there was any weapon under [Smith's] hat" (R. 28) to demonstrate why he removed Smith's hat and searched it, he did not offer any testimony regarding his decision to open the "folded-up piece of paper" after he had "just crinkled [the paper], like that" (R. 30), especially in light of the following testimony from the suppression hearing:
"[SMITH'S ATTORNEY]: And [after crinkling the paper] you didn't immediately draw your hand back, and say, oh, *13 I got hurt; there is a weapon under there, did you?
"[OFFICE WISE]: No.
"[SMITH'S ATTORNEY]: You didn't get cut, did you?
"[OFFICER WISE]: No."
(R. 30-31.) Officer Wise never testified that when he crinkled the "folded-up piece of paper" he felt something inside the paper that might be a weapon or that after crinkling the paper he was unable to rule out the possibility that there was a weapon contained in the "folded-up piece of paper" and that, consequently, it was necessary for him to open the "folded-up piece of paper." In State v. Hails, 814 So.2d at 987, this Court stated that a Terry pat-down:
"`"`is limited in scope to a "pat-down" of the suspects' outer clothing and to seizure of hard objects whose size and shape give the officer probable cause to believe they are weapons.'"' Martin v. State, 695 So.2d 141, 143 (Ala.Crim.App. 1996) (quoting Smith v. State, 292 Ala. 120, 289 So.2d 816, 818 (Ala.1974)). `Having detected the presence of an unknown, potentially dangerous object on a suspect during a frisk, the test for whether an officer may search farther and seize the item is an objective one.' United States v. Swann, 149 F.3d [271,] 275 [(4th Cir.1998)]. It is objectively reasonable for an officer to seize what he or she reasonably believes to be a weapon when the object is approximately the same size and shape as a box cutter, which is often used as a weapon. Id. at 276. Applying the law to the facts of this case, it was reasonable for Doty to seize the credit card. During Doty's patdown search of Hails, he felt something `small and hard' that he believed could have been a razor blade, letter opener, or box cutter in her front jacket pocket. (R. 7.) Doty also testified that he knew that `a box cutter can come in the shape of a credit card.' (R. 19.) This knowledge led Doty to reasonably believe that the small, hard, thin object in Hails's jacket pocket could have been a weapon. (R. 19.) In order to assure himself that what he felt in Hails['s] pocket was not a weapon that could be used against him, and to ensure his and the other officer's safety, Doty seized the object. His seizure of the object was within the scope of the search. Doty did not reach into Hails's pocket until he felt what he thought was a weapon. See Terry v. Ohio, 392 U.S. at 29-30, 88 S.Ct. 1868."
We note that Officer Wise testified at the suppression hearing that "the sole purpose" for his patting Smith down was for "officer safety" (R. 13) and, as previously noted, the State's position at the suppression hearing was that this case was not a plain-feel doctrine case. Thus, it is not the State's position that when Officer Wise crinkled the "folded-up piece of paper," it was "immediately apparent" to him that the paper contained contraband, i.e., rocks of crack cocaine. See Allen v. State, 689 So.2d 212, 213 (Ala.Crim.App.1995)(during a Terry patdown, the police officer moved his hand "more than once" over Allen's back pocket, which contained a small manila envelope folded in half to make sure that the envelope was not a weapon and that it did not contain a razor blade and that just as he realized that there was no weapon, he simultaneously realized that the envelope was a dime bag of marijuana). See also Blake v. State, 772 So.2d 1200, 1204-05 (Ala.Crim.App.2000), wherein this Court stated:
"Officer Spears's tactile perception of the small lumps while patting the outer surface of Blake's pants pocket, combined with the attendant circumstances known to Officer Spears at that time, *14 provided Officer Spears with probable cause to believe that the lumps were rocks of crack cocaine before he reached into Blake's pocket to retrieve them.... We find that, given the totality of the circumstances, Officer Spears had probable cause to believe that the lumps he felt through Blake's clothing were rocks of crack cocaine. Because Officer Spears was feeling for weapons at the time he felt the lumps and recognized them as crack cocaine, the probable cause arose while he was acting within the permissible scope of a protective patdown conducted pursuant to Terry."
In Ex parte James, 797 So.2d 413, 418-19 (Ala.2000), the Alabama Supreme Court stated:
"Terry permits a police officer to conduct a patdown search of a suspect's outer clothing to `discover guns, knives, clubs or other hidden instruments [which may be used] for the assault of the police officer.' 392 U.S. at 29, 88 S.Ct. 1868 (emphasis added). The police officer may intrude beneath the outer surface of the suspect's clothing only if the police officer feels an object he reasonably suspects may be a weapon. Terry, 392 U.S. at 30, 88 S.Ct. 1868.
"....
"In the case before us, Officer Gill did not pat down the outer surface of James's pants pocket to determine if a weapon was present and did not `inadvertently discover' the marijuana cigarettes under the `plain-feel' doctrine. When Officer Gill saw James attempt to reach his hand into his pants pocket, Gill moved James's hand, reached into the pants pocket, and removed the marijuana cigarettes. Officer Gill admitted that he did not pat down the pocket before he reached inside the pocket. Also, there was no evidence that Gill feared for his safety when he saw James attempt to put his hand in his pocket. Therefore, Officer Gill violated James's right against unreasonable search and seizure when he reached into James's pocket without any legally recognized justification gained from first patting down the outer surface of the pocket to determine whether a weapon was present."
(Footnote omitted.)
In light of the foregoing, we conclude that while Officer Wise did not exceed the scope of the Terry patdown when he removed Smith's cap, he did exceed the scope of the Terry patdown when he opened the "folded-up piece of paper" and discovered the rocks of crack cocaine because he failed to establish that he was justified in opening the paperhe did not establish that he felt something in the paper that felt like a weapon; he did not establish that he was unable to rule out the possibility that a weapon was contained in the "folded-up piece of paper" and that, consequently, it was necessary for him to open the paper; and he was unable to establish that it was immediately apparent to him that the "folded-up piece of paper" contained contraband. Thus, we hold that the trial court erred when it denied Smith's motion to suppress.
Therefore, Smith's guilty-plea conviction for unlawful possession of cocaine is reversed and this case is remanded to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB and WISE, JJ., concur.
BASCHAB, J., dissents, with opinion.
BASCHAB, JUDGE, dissenting.
I adhere to my dissent on original submission on the ground that the appellant *15 did not reserve his right to appeal the denial of his motion to suppress. Furthermore, because the officer testified that he had known people to wrap weapons, including razors and pipes, in paper; because he had known people to carry weapons such as pipes and razor blades under hats; and because he had already found a razor blade in the appellant's shirt pocket, he was justified in opening the folded piece of paper. Therefore, I also dissent from this court's opinion on return to remand.
NOTES
[1] Officer Wise is not related to Judge Wise.
[2] Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).