Steve Darryl Davis pleaded guilty to possession of a controlled substance (cocaine), a violation of § 13A-12-212, Ala. Code 1975. Davis was sentenced to three years' imprisonment, but his sentence was suspended and he was placed on supervised probation for the full term of his sentence.
Before entering a guilty plea, Davis reserved for appellate review a single issue — whether the drugs seized from him before his arrest were the fruit of an illegal search and seizure by the police.[1] Because Davis reserved this issue before he entered his guilty plea, the issue is properly before us. SeePrim v. State, 616 So.2d 381, 382-83 (Ala.Crim.App. 1993).
Davis contends that the trial court improperly denied his motion to suppress because, he says, under the facts of this case, the police officer exceeded the scope of his authority when he removed a contact-lens case containing the cocaine from Davis's pants pocket and, further, that the police officer conducted an illegal search of the closed contact-lens case without first obtaining a search warrant.
The State contends that the police officer acted reasonably in seizing the contactlens case because it was possible that the case contained a potentially dangerous weapon. In support of its position, the State cites Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Smith v. State, 884 So.2d 3, 7
(Ala.Crim.App. 2003) (opinion on return to remand).
"In reviewing a trial judge's decision on a motion to suppress where the evidence is not in dispute, we apply a de novo standard of review." Tuohy v. State, 776 So.2d 896, 898 (Ala.Crim.App. 1999). See also Vinson v. State, 843 So.2d 229, 231-32 (Ala. 2001).
As the Alabama Supreme Court stated in Ex parte Tucker,667 So.2d 1339, 1343 (Ala. 1995):
 "All evidence obtained by a search that is conducted in violation of the Constitution of the United States is inadmissible in a state court. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Loyd v. State, 279 Ala. 447, 186 So.2d 731 (1966). The Fourth Amendment to the Constitution of the United States bans all unreasonable searches. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968). Whether a search is unreasonable depends upon the facts and circumstances of the particular case. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Warrantless searches are per se unreasonable, unless they fall within a recognized exception. Ex parte Hilley, 484 So.2d 485 (Ala. 1985). Those exceptions include: objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a Terry `stop and frisk' situation. Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Where a search is executed without a warrant, the burden *Page 762 
falls upon the State to show that the search falls within an exception. Kinard v. State, 335 So.2d 924
(Ala. 1976)."
However, after reviewing the facts of this case and the pertinent caselaw, we conclude that the State did not meet its burden of showing that the police officer's actions fell within the scope of a protective patdown search under Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Our review of the record reveals the following pertinent facts. Sgt. David Williams of the Prattville Police Department testified at the suppression hearing that on March 9, 2002, he received the following information from Agent Tom Reid of the Central Alabama Drug Task Force: A vehicle, as to which the police had received a report indicating its unauthorized use, was being delivered to Prattville from Montgomery; that the vehicle had been loaned to someone who had used it as a trade in a drug transaction; that the individual who had the vehicle and the owner of the vehicle had been in contact and had reached an agreement regarding the return of the vehicle for a particular price; and that the vehicle was to be delivered that evening to a shopping center in Prattville. Sgt. Williams testified that Agent Reid had requested assistance from the Prattville Police Department in conducting surveillance and in possibly detaining the individuals involved in the delivery of this vehicle. That evening several members of the Prattville Police Department established surveillance at the location where the vehicle was expected to be delivered.
One of the members of the Prattville Police Department who assisted with this surveillance was Officer T.R. Hope. During the suppression hearing, Officer Hope testified:
 "[Prosecutor]: And can you tell me how it was you initiated contact [with Davis]?
 "[Officer Hope]: Whenever the investigators stopped the vehicle, we were the last car to approach the vehicle. We got out. Investigators were getting documents out of the vehicle. They instructed me to pat down Mr. Davis for weapons, check his pockets and everything to see if he had any weapons on him.
 "[Prosecutor]: Searching for weapons was the purpose of the patdown?
"[Officer Hope]: Yes, ma'am.
 "[Prosecutor]: What, if anything, did you find on the defendant?
 "[Officer Hope]: While searching his pockets, I found a contact-lens case in his right pants pocket.
When I took the contact-lens case out of his pocket, I could hear something rattling inside it. Not knowing if it could possibly be a razor blade or something of that nature, I opened the contact-lens case. There were three small what appeared to be crack cocaine rocks in the contact-lens case."
(R. 18-19) (emphasis added). On cross-examination, Officer Hope testified:
 "[Davis's attorney]: And were you instructed to pat Mr. Davis down?
"[Officer Hope]: Yes, sir.
 "[Davis's attorney]: And you were the individual that did that; is that correct?
"[Officer Hope]: Yes, sir.
 "[Davis's attorney]: Did you not order him to remove the items from his pocket?
 "[Officer Hope]: No, sir. We did not know what was in his pockets. For officer's safety, we didn't want him to put his hands in his pockets. We instructed him to place his hands on the vehicle. After doing so, then we began our patdown of his pockets. *Page 763 
 "[Davis's attorney]: And he had, what, keys and some other items in his pocket, change?
 "[Officer Hope]: I can't remember all the items that were in his pockets. The only thing I can be sure about is I did come across the contact-lens case in his right pants pocket. Like I said, I could hear something rattling in it.
 "[Davis's attorney]: I understand that. Let me just continue on. When you took the contact-lens case out of his pocket, what did you think that it was or what did you perceive it to be?
 "[Officer Hope]: I don't know. All I could hear is something rattling inside the case.
 "[Davis's attorney]: What I'm asking you is, did you recognize it to be a contact-lens case? Had you seen one before?
"[Officer Hope]: Yes, sir.
 "[Davis's attorney]: Did you recognize that object to be a contact-lens case?
"[Officer Hope]: Yes, sir.
 "[Prosecutor]: Are you talking about after he got it out or before he got it out?
 "[Davis's attorney]: After you got it out of his pocket.
 "[Officer Hope]: Yes, sir. I did recognize it to be a contact-lens container.
 "[Davis's attorney]: You didn't think it was a knife or a box cutter or some other deadly weapon, did you?
 "[Officer Hope]: No, sir. I knew it was a contact-lens container."
(R. 21-23.)
In Smith v. State, 884 So.2d at 13-14, this Court stated:
 "In State v. Hails, 814 So.2d [980] at 987 [(Ala.Crim.App. 2000)], this Court stated that a Terry patdown:
 "`"`"is limited in scope to a `patdown' of the suspects' outer clothing and to seizure of hard objects whose size and shape give the officer probable cause to believe they are weapons."'" Martin v. State, 695 So.2d 141, 143 (Ala.Crim.App. 1996) (quoting Smith v. State, 292 Ala. 120, 289 So.2d 816, 818 (Ala. 1974)). "Having detected the presence of an unknown, potentially dangerous object on a suspect during a frisk, the test for whether an officer may search farther and seize the item is an objective one." United States v. Swann, 149 F.3d [271,] 275 [(4th Cir. 1998)]. It is objectively reasonable for an officer to seize what he or she reasonably believes to be a weapon when the object is approximately the same size and shape as a box cutter, which is often used as a weapon. Id. at 276. Applying the law to the facts of this case, it was reasonable for Doty to seize the credit card. During Doty's patdown search of Hails, he felt something "small and hard" that he believed could have been a razor blade, letter opener, or box cutter in her front jacket pocket. (R. 7.) Doty also testified that he knew that "a box cutter can come in the shape of a credit card." (R. 19.) This knowledge led Doty to reasonably believe that the small, hard, thin object in Hails's jacket pocket could have been a weapon. (R. 19.) In order to assure himself that what he felt in Hails['s] pocket was not a weapon that could be used against him, and to ensure his and the other officer's safety, Doty seized the object. His seizure of the object was within the scope of the search. Doty did not reach into Hails's pocket until he felt what he thought was a weapon. See Terry v. Ohio, 392 U.S. at 29-30, 88 S.Ct. 1868.'
". . . . *Page 764 
 "In Ex parte James, 797 So.2d 413, 418-19 (Ala. 2000), the Alabama Supreme Court stated:
 "`Terry permits a police officer to conduct a patdown search of a suspect's outer clothing to "discover guns, knives, clubs or other hidden instruments [which may be used] for the assault of the police officer." 392 U.S. at 29, 88 S.Ct. 1868
(emphasis added). The police officer may intrude beneath the outer surface of the suspect's clothing only if the police officer feels an object he reasonably suspects may be a weapon. Terry, 392 U.S. at 30, 88 S.Ct. 1868.
"`. . . .
 "`In the case before us, Officer Gill did not pat down the outer surface of James's pants pocket to determine if a weapon was present and did not
"inadvertently discover" the marijuana cigarettes under the "plain-feel" doctrine. When Officer Gill saw James attempt to reach his hand into his pants pocket, Gill moved James's hand, reached into the pants pocket, and removed the marijuana cigarettes. Officer Gill admitted that he did not pat down the pocket before he reached inside the pocket. Also, there was no evidence that Gill feared for his safety when he saw James attempt to put his hand in his pocket. Therefore, Officer Gill violated James's right against unreasonable search and seizure when he reached into James's pocket without any legally recognized justification gained from first patting down the outer surface of the pocket to determine whether a weapon was present.'
"(Footnote omitted.)"
Clearly, a Terry investigatory stop was appropriate in the present case. Davis was with the people who were returning a vehicle whose owner had reported it missing. The vehicle was being returned to the owner for a price and it had been alleged that the people returning it had received it as a trade in a drug transaction. See, e.g., Ex parte Warren, 783 So.2d 86, 89 (Ala. 2000) (holding that a tip from an informant of criminal activity "`created a reasonable suspicion that justified the investigatory stop'" of defendant (quoting Warren v. State, 783 So.2d 74,79-80 (Ala.Crim.App. 1998))).
Additionally, a patdown search was reasonable under the facts of this case — it was nighttime and the people Davis was with were requiring the owner of a vehicle to pay them for the return of his vehicle — a vehicle that had allegedly come into their possession because it had been used by someone else as a trade in a drug transaction. See Riddlesprigger v. State, 803 So.2d 579,582 (Ala.Crim.App. 2001), in which this Court stated:
 "When an officer stops a person pursuant to Terry
[v.Ohio, 392 U.S. 1 (1968),] the officer
 "`"`is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.' 392 U.S. at 30, 88 S.Ct. at 1884-85."'
 "New v. State, 674 So.2d 1377, 1378 (Ala.Crim.App. 1995) (quoting Worthy v. State, 473 So.2d 634, 636
(Ala.Crim.App. 1985))."
However, a Terry patdown search is to be limited to the outer
clothing unless the patdown search reveals something the officer suspects to be a weapon. See, e.g., Hall v. State,897 So.2d 410, 411 (Ala.Crim.App. 2003) (the police officer testified that while conducting a patdown search of Hall after a traffic stop, he felt a bulge in Hall's right pocket that "`[f]elt like a small pocketknife'" and that he asked Hall to remove the item from his pocket). *Page 765 
In the present case, Officer Hope testified that he was instructed to search Davis's pants pockets and that as he removed the items from Davis's pants pocket, he recognized one of those items to be a contact-lens case. Officer Hope's testimony in the present case failed to establish that he was justified in reaching into Davis's right pants pocket and removing the contact-lens case; Officer Hope never established during his testimony that when he was conducting the patdown of Davis, he suspected that the item in Davis's pants pocket might be a weapon or that it was "immediately apparent" to him that the item in Davis's pants pocket was contraband before he removed it from Davis's pants pocket. See Ex parte Warren, 783 So.2d at 90
(wherein the Alabama Supreme Court noted that under Minnesota v.Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), contraband may be removed from a suspect's person when the incriminating nature of an object detected during a Terry
patdown is "immediately apparent" to the officer).
In light of the foregoing, we hold that the trial court erred by denying Davis's motion to suppress the drugs discovered in the contact-lens case because the State failed to meet its burden of showing that Officer Hope's removal of the contact-lens case from Davis's pants pocket was reasonable under the circumstances. Consequently, it is unnecessary for us to consider the remaining issues raised by Davis.
Davis's guilty-plea conviction for unlawful possession of cocaine is reversed and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB and BASCHAB, JJ., concur. WISE, J., concurs in the result.
[1] On August 9, 2003, Davis filed a motion to suppress the drugs taken from him by the police. (C. 15.) On December 16, 2003, a hearing was held on Davis's motion to suppress. (R. 4.) At the conclusion of the suppression hearing, the trial court denied the motion to suppress. (R. 36.) On April 12, 2004, Davis filed a pleading entitled "Appeal Issue Reservation," reserving the search-and-seizure issue in the event he entered a plea of guilt to the charged offense. On April 13, 2004, a guilty-plea hearing was held and, at the beginning of the hearing, Davis's counsel again informed the trial court that Davis was pleading guilty but was reserving the search-and-seizure issue for appeal. (R. 44-45.) Davis then entered his plea of guilt to the drug charge. (C. 24; R. 51-52.) *Page 385